## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CLIFTON JACKSON, | ) | CASE NO. 1:18CV476 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| BRIGHAM SLOAN, Warden | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |

This matter has been referred to the undersigned United States Magistrate Judge for preparation of a Report and Recommendation pursuant to Local Rule 72.2(b)(2).  Before the Court is the Petition of Clifton Jackson ("Jackson" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Jackson is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Jackson*, Lorain County Court of Common Pleas Case No. 11CR83104.

Before the Court is Respondent Brigham Sloan's Motion to Dismiss the Petition as Time-Barred.  (Doc No. 8.)  For the reasons that follow, it is recommended that Respondent's Motion be GRANTED and the Petition be DISMISSED as time-barred.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Jackson's conviction as follows:

> {¶ 2} On August 21, 2011, Jackson was indicted on (1) one count of trafficking in drugs in violation of R.C. 2925.03(A)(2), a felony of the first degree; (2) one count of possession of drugs in violation of R.C. 2925.11(A), a felony of the first degree; and (3) one count of possessing criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree. The trafficking in drugs and possession of drugs counts both included a major drug offender specification. The trafficking count also included a forfeiture specification.

> {¶ 3} These charges arose from a June 14, 2011 incident in which law enforcement officials conducted an investigatory stop of Jackson's vehicle. Ohio State Highway Patrol Trooper Christopher Beyer indicated that he pulled Jackson's vehicle over because he observed it driving too close behind a recreational vehicle. After initiating the stop and receiving contradictory answers from Jackson regarding the ownership of the vehicle and his destination, Trooper Beyer went to his patrol car, called for a canine unit to perform a sniff test, and attempted to run a background check on Jackson. However, at that time, the LEADS background check system was down.

> {¶ 4} Trooper Beyer then returned to the vehicle and asked Jackson to get out and sit in the backseat of the patrol car while Trooper Beyer performed the background check. Approximately seven minutes and 30 seconds after the stop's initiation, Trooper Michael Trader of the canine unit arrived and the sniff test was conducted. The dog alerted at the back door on the driver side of Jackson's vehicle approximately eight minutes after the stop was initiated. At the time of the positive alert, the LEADS system still had not been restored nor had Jackson's background check been completed. Upon learning of the positive sniff test, Jackson informed Trooper Beyer that all of the vehicle's contents belonged to him. Trooper Beyer and Trooper Trader then searched the vehicle, found a duffle bag in the vehicle's trunk, and discovered that it contained over two kilograms of cocaine and drug packaging materials. Trooper Beyer also found $1,262.00 in cash on Jackson's person.

> {¶ 5} The trial court held a pretrial hearing on September 19, 2011. The journal entry from this hearing noted that "DEFENDANT [JACKSON] WAIVES STATUTORY TIME FOR SPEEDY TRIAL PURSUANT TO RC 2945.71 et. [sic] seq." Jackson signed the entry containing the waiver of his rights, which contained no time limitation. He subsequently filed a motion to suppress the evidence obtained from the investigatory stop on the basis that the stop was unsupported by reasonable suspicion and that its duration was unjustifiably extended.

{¶ 6} After a hearing on the motion to suppress, the trial court denied Jackson's motion to suppress by judgment entry dated September 28, 2012.  In November 2012, Jackson requested that the trial court reconsider its denial of the motion to suppress and he filed a supplemental brief in support on December 7, 2012. The trial court summarily denied the motion to reconsider on December 11, 2012.

{¶ 7} Beginning with the May 22, 2013 pretrial hearing, Jackson stopped signing the speedy trial waivers that were contained in the trial court's entries journalizing the results of pretrial hearings.  Instead, he interlineated into the standard form language that he was not waiving his speedy trial rights. However, Jackson never filed a jury trial demand and objection that specifically re-invoked his speedy trial rights. Nevertheless, on February 7, 2014, Jackson filed a motion to dismiss the indictment on the basis that his speedy trial rights were violated. The trial court denied the motion.

{¶ 8} Trial commenced on February 11, 2014 and concluded the next day. The State offered the testimony of the investigating police officers and a forensic chemist as well as the discovered cocaine, packaging materials, and $1,262.00 in cash into evidence. It also offered the video and audio recording of the traffic stop. The jury returned guilty verdicts on all counts alleged in the indictment. It additionally found that Jackson was a major drug offender for both the trafficking and possession counts. However, it did not find that the forfeiture specification was proven. As to the possessing criminal tools count, the jury's verdict form included the following caption: "Verdict, Count No. 3 Possessing Criminal Tools R.C. § 2923.24(A)—F5." It also contained the following language regarding the conviction: "We, the jury, find the Defendant CLIFTON A. JACKSON, * guilty of Possessing Criminal Tools, as charged in Count No. 3 of the indictment."

{¶ 9} The trial court immediately proceeded to sentencing. It merged the possession and trafficking offenses for sentencing purposes and the State elected to proceed on the trafficking count. The trial court subsequently sentenced Jackson to 11 years for the drug trafficking conviction with a major drug offender specification. It also imposed an 11 month sentence for the possessing criminal tools conviction, but this sentence was ordered to run concurrently with the sentence for drug trafficking. At the sentencing hearing, the trial court also ordered that Jackson repay the attorney fees incurred by his court-appointed counsel. However, before issuing this order, the trial court did not inquire into Jackson's ability to pay. Further, this order was not included in the judgment entry of conviction and sentence but the trial court subsequently issued a judgment entry ordering Jackson to repay $3,113.56 in attorney fees.

*State v. Jackson*, 38 N.Ed.3d 407, 414-5 (Ohio App. 9th Dist. 2015).

## II. Procedural History

**A.    Trial Court Proceedings**

In July 2011, a Lorain County Grand Jury charged Jackson with (1) one count of trafficking in drugs in violation of Ohio Rev. Code § 2925.03(A)(2) with a specification that Jackson was a major drug offender as well as a forfeiture specification (Count One); (2) one count of possession of drugs in violation of Ohio Rev. Code § 2925.11(A) with a specification that Jackson was a major drug offender (Count Two); and (3) one count of possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A) (Count Three).  (Doc. No. 8-1, Exh. 1.) Jackson pled not guilty.  (Doc. No. 8-1, Exh. 50.)

The docket reflects Jackson, through counsel, filed Motions for Discovery in August and November 2011.[1]  (Doc. No. 8-1, Exh. 50.)  The State filed Notices of Supplemental Discovery in September and December 2011.  (*Id.*)  Meanwhile, on November 4, 2011, Jackson filed a Motion to Suppress, in which he sought to suppress all evidence obtained as a result of the search of his vehicle as well as all custodial statements he made during the traffic stop in question.  (Doc. No. 8-1, Exh. 3.)  The State opposed the motion.  (Doc. No. 8-1, Exh. 4.)

The trial court conducted a pretrial conference on November 7, 2011, at which time it determined Jackson's Motion to Suppress would be heard on December 12, 2011.  (Doc. No. 8-1, Exh. 50.)  On December 12, 2011, however, a pre-trial conference was not held, at Jackson's

---

[1] In addition, a pre-trial conference was held on September 19, 2011. (Doc. No. 8-1, Exh. 2.)  At Jackson's request, the pretrial was continued until November 7, 2011.  (*Id.*)  The Journal Entry states "Defendant waives statutory time for speedy trial pursuant to R.C. 2945.71 et seq." under which Jackson signed his name.  (*Id.*)

4

request. (*Id.*)  The docket reflects the hearing on Jackson's Motion to Suppress was repeatedly rescheduled. (*Id.*)

On June 5, 2012, the trial court conducted a hearing on Jackson's Motion to Suppress, at which Troopers Christopher Beyer and Michael Trader testified. (Doc. Nos. 8-1, Exh. 50; and 12-1.)  The transcript of the hearing reflects a video of the June 4, 2011 traffic stop was admitted as an Exhibit at the hearing. (Doc. No. 12-1 at Tr. 18.)  Supplemental briefing was filed in August 2012. (Doc. No. 8-1, Exh. 7.)

On September 28, 2012, the trial court issued a written decision denying Jackson's Motion to Suppress. (Doc. No. 8-1, Exh. 9.)  Jackson thereafter filed a Motion to Reconsider and Supplement to Motion to Reconsider (Doc. No. 8-1, Exhs. 11, 12.)  The trial court denied the Motion to Reconsider on December 11, 2012. (Doc. No. 8-1, Exh. 14.)

On July 3, 2013, Jackson's counsel filed a "Demand for Discovery Prepared By and At the Direction of Clifton A. Jackson." (Doc. No. 8-1, Exh. 17.)  Therein, Jackson requested a number of items, including (1) "copies of all relevant documents including supporting documents but not limited to the Ohio State Highway patrol of documented logs regarding the operational status of the L.E.A.D.S program during the exact date and specific time frame(s) of detention of June 14, 2011;" (2) "copies of any and all documented report(s) per the Ohio State Highway Patrol and their documented logs regarding malfunctions of Ohio State Patrol Trooper Beyer's patrol vehicle (per Trooper Beyer motion to suppress testimony), including any and all vehicle audio and video recordings but not limited to, the exact date and time of detention on June 14, 2011;" and (3) "a full and complete (audio and video) copy of the traffic stop in its

5

entirely the exact date and time of detention on June 14, 2011."[2]  (*Id.*)  The State filed a response on October 17, 2013, which did not address many of Jackson's requests but did state that "all videos and audios that are available to the State have already been provided to defense counsel."  (Doc. No. 8-1, Exh. 18.)

Meanwhile, the trial court set a jury trial date of October 29, 2013.  (Doc. No. 8-1, Exh. 50.)  Trial was later rescheduled to December 17, 2013.  (*Id.*)  In November 2013, defense counsel made an oral motion to withdraw, which was granted.  (Doc. No. 8-1, Exhs. 20, 50.)  A new trial date of January 28, 2014 was set.  (*Id.*)  Trial was later rescheduled to February 11, 2014.  (*Id.*)

On February 7, 2014, Jackson, through new defense counsel, filed a "Motion to Dismiss and Motion to Preclude Prepared By & At the Direction of Defendant."  (Doc. No. 8-1, Exh. 24.)  Therein, Jackson moved the Court to dismiss the charges against him on the ground the State had violated his constitutional and statutory right to a speedy trial.  (*Id.*)  In addition, Jackson moved the Court to "preclude the admission of any and all evidentiary material previously demanded by Defendant, which the State has refused to produce."  (*Id.*)  The trial court denied the Motion on February 10, 2014.  (Doc. No. 8-1, Exh. 25.)

Jury trial commenced on February 11, 2014.  (Doc. No. 8-1, Exh. 50.)  After two days of trial, the jury returned a verdict of guilty on all counts and as to the major drug offender specification.  (Doc. No. 8-1, Exh. 26.)  Jackson moved for a presentence investigation, which motion was denied.  (*Id.*)  On February 13, 2014, the trial court merged the possession charge

---

[2] The "Demand" indicated that "partial audio and video recording have been provided although the complete recordings have not been produced."  (*Id.*)

with the trafficking charge, and sentenced Jackson to an aggregate prison term of 11 years.

(Doc. No. 8-1, Exh. 27.)  In a separate entry issued the following day, the trial court also ordered

Jackson to reimburse Lorain County for court-appointed attorney fees in the amount of

$3,113.56.  (Doc. No. 8-1, Exh. 28.)

**B.      Direct Appeal**

On March 7, 2014, Jackson, through new counsel, filed a Notice of Appeal with the

Court of Appeals for the Ninth Appellate District ("state appellate court").  (Doc. No. 8-1, Exh.

29.)  In his appellate brief, Jackson raised the following assignments of error:

I.      Defendant was denied due process of law when the Court overruled his Motion to Suppress.

II.     Defendant was denied due process of law when the Prosecutor offered evidence of Defendant's exercise of his constitutional rights.

III.    Defendant was denied due process of law when the Court overruled his Motion to Dismiss based on the violation of the Speedy Trial statute.

IV.     Defendant was denied effective assistance of counsel.

V.      Defendant was denied his Sixth Amendment right to present a defense when the Court would not either re-open the evidence to allow recall of witnesses or have witnesses recalled who testified during Defendant's absence.

VI.     Defendant was denied his constitutional right to be present when the Court commenced trial when Defendant belatedly appeared on the second day of trial.

VII.    Defendant was denied a fair trial when the jurors were informed that Defendant was under restraint.

VIII.   Defendant was denied due process of law when he was sentenced for a felony version of possession of criminal tools and the verdict did not support a felony version.

IX.     The Court erred in ordering Defendant to repay attorney fees.

7

       X.      Defendant was denied due process of law when the Court overruled his
               Motion for Judgment of Acquittal.

(Doc. No. 8-1, Exh. 30.)  The State filed a brief in response, to which Jackson replied.  (Doc.

No. 8-1, Exhs. 31, 32.)

On June 22, 2015, the state appellate court affirmed Jackson's conviction and prison

term, but reversed the trial court's order that Jackson repay his court-appointed attorney fees.

(Doc. No. 8-1, Exh. 34.)  The state appellate court remanded for the limited purpose of deciding

Jackson's ability to pay the amount of the fees.  (*Id.*)

On remand, the trial court held a hearing on June 30, 2015 to assess Jackson's ability to

pay.  (Doc. No. 8-1, Exh. 35.)  The court thereafter issued an entry in which it found Jackson did

not have the ability to pay the fees.  (*Id.*)  Jackson did not appeal this entry to the state appellate

court.

On September 3, 2015, Jackson, proceeding *pro se,* filed a Notice of Appeal from the

state appellate court's decision, as well as a Motion for Leave to File Delayed Appeal with the

Supreme Court of Ohio.  (Doc. No. 8-1, Exh. 36.)  In his Motion for Leave, Jackson set forth the

following reasons for his failure to timely appeal the state appellate court decision:

    1.  On or around November of 2014, the Appellant had been in transit under
    federal custody due to his pending federal trial in the Western District of New
    York - U.S. v. Clifton Jackson, Docket No. 13-CR-098-S,  Appellant was held
    in Niagara County Jail, P.O. Box 496, Lockport, New York 14094.

    2.  In late November of 2014 to late December of 2014, Appellant was held in
    a Federal Prison - N.E.O.C.C., 2240 Hubbard Road, Youngstown, Ohio 44505.

    3.  In late December of 2014 through early July of 2015, Appellant was once
    again held in Niagara County Jail, P.O. Box 496, Lockport, New York 14094.

    4.  While still in New York on or around July 11th, 2015, Appellant was
    notified by appellate counsel of the 45 day rule, in which his appeal to the

8

Supreme Court of Ohio must be filed, with instruction to immediately contact the Ohio Public Defenders Office for assistance in the filing of an appeal in the Supreme Court of Ohio.  See attached cover letter dated July 14th, 2015.

5.  Appellant immediately contact the Ohio Public Defenders Office as instructed by appellate counsel, informing them of his transit status due to his pending Federal Case.

6.  However, within the next week, Appellant was transferred to N.E.O.C.C., 2240 Hubbard Road, Youngstown, Ohio 44505.

7.  Once back at N.E.O.C.C, Appellant sent a Notice of Address Change to the Public Defender (amongst others) dated July 20th, 2015, which was attached to a supplement.

8.  Once again Appellant within 7 to 11 days, was transferred to Lake Erie Correctional Institution, 501 Thompson Road, P.O. Box 8000, Conneaut, Ohio 44030.

9.  Once back at Lake Erie Corr. Inst. (LaECI), Appellant sent an up-dated Notice of Address Change on August 3rd, 2015 to the Public Defender seeking assistance with the filing of his appeal as of right to the Ohio Supreme Court.

10.  Appellant has yet to receive a response from the Public Defender as of August 18th, 2015.

11.  So with no other remedy available to him at law, Appellant is throwing himself on the mercy of this Honorable Court, and requesting leave to filing delayed based on the above-stated reasons in lines 1 through 10.

(Doc. No. 8-1, Exh. 37.)  The State did not file a response.

On October 28, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 8-1, Exh. 38.)

**C.**     **Application to Reopen Appeal under Ohio App. R. 26(B)**

On January 17, 2017, Jackson filed a *pro se* Application to Reopen Appeal pursuant to Ohio App. R. 26(B).  (Doc. No. 8-1, Exh. 39.)  In his Application, Jackson argues appellate counsel was ineffective for failing to raise the following assignments of error:

9

I.   Appellant was denied effective assistance of counsel as guaranteed by the 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, where his appellate counsel omitted a "Dead Bang Winner," prejudicing Appellant of receiving a full review by the court.

II.   Absent reasonable suspicion, trooper's extension of a traffic stop in order to conduct a dog sniff violated appellant's constitutional shield against unreasonable search and seizure under the 4th Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, where evidence seized was unlawful under the fruit of the poisonous tree doctrine.

III.   Appellant was deprived of his right to a fair trial due to the prosecutor withholding of "Brady Material" critical to his claims of obstruction of justice and tampering with evidence committed by Troopers C. Beyer and M. Trader, in violation of his 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, where the state failed to disclose the LEADS LOG & CAD REPORTS.

IV.   Appellant was deprived of his right to a fair trial due to bias on the part of both Common Pleas Court Judges "Edward Zaleski" and "John Miraldi", in violation of his 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, where at a suppression hearing Judge Zaleski added facts to the record which never actually occurred to justify denying on the record appellant's motion to suppress.

V.   Appellant was deprived of effective assistance of counsel as guaranteed by the 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, where trial counsel failed to request a formal decision on his request for Brady Material needed to verify that LEADS LOG & CAD REPORTS of June 14th, 2011, were available of both Troopers cruisers and favorable to the defense.

VI.   Appellant's sentence for Trafficking in Drugs and Possession of Drugs violates the Double Jeopardy clause protection guaranteed by the 5th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

(Doc. No. 8-1, Exh. 39.)  He also filed a lengthy Affidavit in support of his Application, in

which he explained his reasons for his failure to timely reopen his appeal.  (Doc. No. 8-1, Exh.

10

40.)  The State filed a brief in opposition, to which Jackson replied (Doc. No. 8-1, Exhs. 41,

42.)

On February 2, 2017, the state appellate court denied Jackson's Application as untimely.

(Doc. No. 8-1, Exh. 43.)  The court explained as follows:

> Pursuant to App.R. 26(B), Jackson was required to file his application for
> reopening within 90 days of the journalization of our judgment entry.
> "Consistent enforcement of the rule's deadline by the appellate courts in Ohio
> protects on the one hand the state's legitimate interest in the finality of its
> judgments and ensures on the other hand that any claims of ineffective
> assistance of appellate counsel are promptly examined and resolved." *State
> v. Gumm*, 103 Ohio St.3d 162, 2004-Ohio-4755, ¶ 7.
>
> Here, this Court issued its judgment entry and opinion in the direct appeal giving
> rise to this proceeding  on June 22, 2015.   To be considered  timely, Jackson
> must have filed his application for reopening on or before September 21, 2015.
> Jackson, however, filed his application on January 17, 2017, nearly  16 months
> beyond the time provided for  in App.R. 26(B). Jackson concedes that his
> application is untimely.   If an application for reopening is not filed within
> the 90-day period set forth in App.R. 26(B)(l), an appellant must make a
> showing of  good cause  for the untimely filing. App.R. 26(B)(2)(b).
>
> In arguing the existence of  good cause, Jackson contends that his appellate
> counsel refused to communicate with him, which compromised  his "abilities to
> receive appropriate appellate review." Jackson also argues that he received late
> notification of this Court's June 22, 2015 decision.  However, a review of the
> docket indicates  that Jackson  appealed this Court's decision  to the Supreme
> Court of Ohio on September 3, 2015.  The notice of appeal is signed by Jackson
> and dated August 20, 2015.   Jackson was thus aware  of this Court's June 22,
> 2015 decision  at least  one month  before the time frame  for filing his
> application for  reopening  under App.R. 26(B) had  expired. Accordingly,
> Jackson  has failed to demonstrate  good cause  for the delay in  seeking
> reopening.

(*Id.*)

On March 8, 2017, Jackson filed a *pro se* Notice of Appeal to the Supreme Court of

Ohio.  (Doc. No. 8-1, Exh. 44.)  In his Memorandum in Support of Jurisdiction, Jackson raised

the following Propositions of Law:

11

I.      Appellant was denied effective assistance of counsel as guaranteed by the 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, where his appellate counsel omitted a "Dead Bang Winner," prejudicing Appellant of receiving a full review by the court.

II.     Absent reasonable suspicion, trooper's extension of a traffic stop in order to conduct a dog sniff violated appellant's constitutional shield against unreasonable search and seizure under the 4th Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, where evidence seized was unlawful under the fruit of the poisonous tree doctrine.

III.    Appellant was deprived of his right to a fair trial due to the prosecutor withholding of "Brady Material" critical to his claims of obstruction of justice and tampering with evidence committed by Troopers C. Beyer and M. Trader, in violation of his 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, where the state failed to disclose the LEADS LOG & CAD REPORTS.

IV.     Appellant was deprived of his right to a fair trial due to bias on the part of both Common Pleas Court Judges "Edward Zaleski" and "John Miraldi", in violation of his 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, where at a suppression hearing Judge Zaleski added facts to the record which never actually occurred to justify denying on the record appellant's motion to suppress.

V.      Appellant was deprived of effective assistance of counsel as guaranteed by the 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, where trial counsel failed to request a formal decision on his request for Brady Material needed to verify that LEADS LOG & CAD REPORTS of June 14th, 2011, were available of both Troopers cruisers and favorable to the defense.

VI.     Appellant's sentence for Trafficking in Drugs and Possession of Drugs violates the Double Jeopardy clause protection guaranteed by the 5th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

(Doc. No. 8-1, Exh. 45)  The State filed a response on March 22, 2017.  (Doc. No. 8-1, Exh. 46.)

12

On May 31, 2017, the Supreme Court of Ohio declined to accept jurisdiction of Jackson's appeal pursuant to S.Ct. Prac. R. 7.08(B)(4). (Doc. No. 8-1, Exh. 47.)

On August 28, 2017, Jackson filed a Petition for Writ of Certiorari to the United States Supreme Court. (Doc. No. 8-1, Exh. 48.) The Supreme Court denied Jackson's Petition on November 6, 2017. (Doc. No. 8-1, Exh. 49.)

**D.      Federal Habeas Petition**

On February 22, 2018,[3] Jackson filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

> **GROUND ONE**:      Petitioner was denied effective assistance of counsel as guaranteed by the 6th and 14th Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, where his appellate counsel omitted a "dead bang winner," prejudicing Petitioner of receiving a full review by the Court.

> **GROUND TWO**:      Jackson's traffic stop exceeded the time needed to handle the matter for which the stop was made thereby violating Jackson's constitutional rights against unreasonable search and seizure.

> **GROUND THREE**:      Jackson was deprived of his due process right to a fair and impartial trial due to the Prosecutor withholding of "Brady material" critical to Jackson's defense and appellate counsel's failure to assign this error on appeal.

> **GROUND FOUR**:      Jackson was deprived of his right to a fair trial due to bias on the part of Common Pleas Court Judges "Edward Zaleski" and "John Miraldi," in violation of his Sixth and Fourteenth

---

[3] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). While the Petition herein did not arrive at the Court for filing until February 28, 2018, Jackson states that he placed it in the prison mailing system on February 22, 2018. (Doc. No. 1 at 14.) Thus, the Court will consider the Petition as filed on February 22, 2018.

Amendments to the United States Constitution, where at a Suppression Hearing, Judge Zaleski added facts to the record which never actually occurred to justify denying on the record Jackson's Motion to Suppress.

**GROUND FIVE**: Jackson was deprived of effective assistance of counsel as counsel is guaranteed by the 6th and 14th Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, where trial counsel failed to request a decision on his request for Brady Materials needed to verify that LEADS and CAD Reports of June 14, 2011, were available of both Trooper's cruisers and favorable to the defense.

**GROUND SIX**: Jackson's sentence for trafficking in drugs and possession of drugs violates the Double Jeopardy Clause protection guaranteed by the 5th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**GROUND SEVEN**: Jackson was denied Due Process of Law when the prosecutor offered evidence of Defendant's exercise of his Constitutional Rights.

**GROUND EIGHT**: Jackson was denied Due Process of Law when the court overruled his Motion to Dismiss based on the violation of Speedy Trial Statute.

**GROUND NINE**: Jackson was denied his Sixth Amendment Right to Present a Defense when the court would not either re-open the evidence to allow recall of witnesses or have witnesses recalled who testified during Jackson's absence.

**GROUND TEN**: Jackson was denied his Constitutional Right to be present when the court commenced trial when the Defendant belatedly appeared on the second day of trial.

**GROUND ELEVEN**: Jackson was denied Due Process of Law when the court overruled his Motion for Judgment of Acquittal.

(Doc. 1.)

14

Respondent filed a Motion to Dismiss the Petition as Time-Barred on May 16, 2018. (Doc. No. 8.)  At that time, Respondent also filed the state court record, which consisted of 54 exhibits.  (Doc. No. 8-1.)  Respondent did not file the state trial court transcripts.

On June 6, 2018, Jackson filed the following two motions: (1) "Motion to Request the Transcripts Submitted to this Court for the purposes of preparing Jackson's Traverse;" and (2) "Motion for An Extension of Time to File Traverse."  (Doc. Nos. 9, 10.)  Therein, Jackson argued Respondent violated this Court's Initial Order by failing to submit a complete copy of the state court trial transcript.  He also requested an extension of time to submit his Traverse.

On June 12, 2018, the Court issued an Order denying Jackson's Motion for Transcripts. (Doc. No.11.)  The Court noted that "Respondent has moved to dismiss the Petition as time-barred, which does not ordinarily necessitate review of the underlying state court trial transcript." (*Id*. at 2.)  The Court further found as follows:

> . . . Jackson has failed to demonstrate the trial transcript is necessary to resolution of the particular Motion to Dismiss filed in this case.  Jackson argues the transcript is necessary because he "disputes some of the facts" and seeks to "highlight the perjured and conflicting testimony" of the State Troopers who arrested him.  He does not, however, explain how the underlying facts in this matter bear any relevance to the Respondent's argument the instant Petition is untimely under 28 U.S.C. § 2244(d).

(*Id*.)  The Court noted, however, that "[i]f the Court later determines the trial transcripts are necessary for resolution of Respondent's Motion to Dismiss, the Court will order supplementation of the habeas record at that time."  (*Id*. at 3.)  Lastly, the Court granted Jackson's motion for extension of time to file his Traverse.  Jackson filed his Traverse on July 3, 2018.  (Doc. No. 12.)

The Court has carefully reviewed the parties' filings and the state court record, and has determined supplementation of the habeas record to include the state court transcripts is not necessary for resolution of the instant case.  Accordingly, the Court will proceed to consider Respondent's Motion to Dismiss the Petition as Time-Barred, below.

### III. Law and Argument

**A.      Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a State court.  Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of--

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**B.      One-Year Limitation**

Pursuant to § 2244(d)(1)(A), the AEDPA's one year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Here, Jackson was sentenced on

16

February 13, 2014 and timely appealed on March 7, 2014.  (Doc. No. 8-1, Exhs. 27, 29.)  The state appellate court affirmed his conviction and prison sentence in a decision that was journalized on June 22, 2015.  (Doc. No. 8-1, Exh. 34.)  Jackson then had forty-five (45) days to appeal to the Supreme Court of Ohio, but failed to do so.

Based on this sequence of events, Respondent argues Jackson's conviction and prison sentence became "final" for purposes of § 2244(d)(1)(A) on August 6, 2015, forty five (45) days after the state appellate court released its decision affirming his conviction and the time to file a timely notice of appeal with the Supreme Court of Ohio expired.  (Doc. No. 8 at 18.)  Respondent then asserts the limitations period commenced on August 7, 2015 and, absent tolling, would have expired one year later on Monday, August 8, 2016.[4]  *Id.*

Jackson does not challenge Respondent's assertion that § 2244(d)(1)(A) is the applicable provision or that his Petition is untimely thereunder.  (Doc. No. 12.)  Thus, the Court finds Jackson's conviction and sentence became "final" for purposes of § 2244(d)(1)(A) on August 6, 2015, forty five (45) days after the state appellate court issued its decision affirming his conviction and the time to file a timely notice of appeal with the Supreme Court of Ohio

---

[4] As discussed *supra,* while the state appellate court affirmed Jackson's convictions and prison sentence, it reversed the trial court's decision to order Jackson to reimburse Lorain County for his court-appointed attorney fees.  (Doc. No. 8-1, Exh. 34.)  On remand, the trial court conducted a hearing on June 30, 2015 to determine Jackson's ability to pay the fees at issue.  (Doc. No. 8-1, Exh. 35.)  The trial court issued a judgment entry on that date finding Jackson did not have the ability to pay.  (*Id*.)  Jackson did not appeal this entry to the state appellate court. In his Petition and Traverse, Jackson does not argue this limited remand affected the running of the statute of limitations.  Upon its own review, the Court agrees with Respondent that the statute of limitations is not affected by the trial court's June 30, 2015 entry on remand.  As Respondent notes, Jackson would have had thirty days to appeal the trial court's June 30, 2015 entry but failed to do so. Accordingly, the limitations period under this scenario would have begun to run on July 30, 2015, which is earlier than August 6, 2015, the date on which this Court has found Jackson's conviction and sentence became final.

17

expired. Accordingly, the Court finds the limitations period commenced on August 7, 2015 and, absent tolling, expired one year later on Monday, August 8, 2016. *Id.*

However, as Respondent correctly notes, the AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191, 126 S.Ct. 846, 163 L.Ed.2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state post-conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id*.

Only "properly filed" applications for post-conviction relief or collateral review toll the statute of limitations, and "a state post-conviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 169 L.Ed.2d 329 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905 at *2 (S.D. Ohio Jan. 8, 2009). A timely filed state post-conviction matter, however, cannot serve to toll a statute of limitations which has already expired before the motion was filed. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of

18

limitations." *Vroman*, 346 F.3d at 602 (citation omitted).  Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling.  *See Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007); *Monroe*, 2009 WL 73905 at *2.

Here, Jackson filed his *pro se* Notice of Appeal and Motion for Delayed Appeal on September 3, 2015.  (Doc. No. 8-1, Exhs 36, 37.)  Thus, the limitations period began to run on August 7, 2015 (i.e., the day after Jackson's conviction became final on August 6, 2015) and ran continuously for twenty-seven (27) days until he filed his Motion for Delayed Appeal on September 3, 2015.[5]  The statute was tolled until the Supreme Court of Ohio denied Jackson's motion on October 28, 2015, and began to run again on October 29, 2015.  (Doc. No. 8-1, Exh. 38.)  The limitations period then ran uninterrupted for 338 days until it expired on Monday, October 3, 2016.

The record reflects Jackson filed his 26(B) Application on January 17, 2017.  (Doc. No. 8-1, Exh. 39.)  However, as noted above, state collateral review proceedings can no longer serve to avoid the statute of limitations bar once the limitations period is expired.  *See Vroman*, 346 F.3d at 602.  Because Jackson's *pro se* 26(B) application was filed well after the statutory limitations period expired, it did not have any further tolling effect.

---

[5]  While the filing of a motion for delayed appeal may have a tolling effect during the time the motion remains pending, an unsuccessful motion for delayed appeal does not restart the statute of limitations.  *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) ("although the filing of the motion for delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion"); *Board v. Bradshaw*, 805 F.3d 769, 773 (6th Cir. 2015); *Anderson v. Brunsman*, 562 Fed. Appx. 426, 429-430 (6th Cir. April 10, 2014); *Backie v. Moore*, 2015 WL 2137164 at * 7 (N.D. Ohio May 7, 2015); *Sands v. Bunting*, 2015 WL 6658725 at * 6 (N.D. Ohio Oct. 30, 2015) (citing cases).

As the statutory limitations period expired on October 3, 2016 and Jackson did not file his habeas petition until February 22, 2018, the Court finds the Petition is over one year and four months late and is untimely under § 2244(d)(1)(A).  Therefore, unless equitable tolling is appropriate, Jackson's Petition should be dismissed as time-barred.[6]

## C.     Equitable Tolling

Although the Petition herein is untimely, the AEDPA statute of limitations period is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010).  Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."  *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).  *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011); *Oberacker v. Noble*, 2018 WL 4620666 at * 3 (6th Cir. Sept. 24, 2018).  However, the equitable tolling doctrine is granted by courts only "sparingly."  *See Robertson*, 624 F.3d at 784. Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of

---

[6] Jackson does not argue the limitations period should commence at a later date for any of the reasons set forth in §§ 2244(d)(1)(B)-(D).  The Court notes that Jackson's third and fifth habeas grounds for relief involved alleged "*Brady*" material; i.e., the LEADS and CAD reports relating to his June 4, 2011 traffic stop.  (Doc. No. 12 at 17-18.)  Jackson does not argue the statute of limitations should commence at a later date on the grounds that he discovered the factual predicate of these *Brady* claims subsequent to trial and/or the state appellate court decision.  On its own review, the Court notes that Jackson was aware of the existence of the LEADS and CAD reports prior to trial and, in fact, requested their production in his pre-trial "Demand for Discovery Prepared By and At the Direction of Clifton A. Jackson." (Doc. No. 8-1, Exh. 17.)  Thus, Jackson would have been aware both at trial and at the time of the state appellate court decision that these materials had not been produced.  Accordingly, and in the absence of any argument from Jackson on this issue, the Court finds § 2244(d)(1)(D) is not applicable to Jackson's habeas grounds for relief, including his third and fifth grounds.

20

persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir.2011)(quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish that (1) he has been pursuing his rights diligently; and, (2) some extraordinary circumstance stood in his way and prevented timely filing. *Holland,* 130 S.Ct. at 2565. *See also Hall*, 662 F.3d at 749; *Griffin*, 308 F.3d at 653. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence." *Holland*, 130 S.Ct. at 2565. That being said, the Sixth Circuit has held that excessive delays in filing lack appropriate diligence. *See e.g. Keeling v. Warden*, 673 F.3d 452, 463–64 (6th Cir. 2012); *Vroman*, 346 F.3d at 605 (stating that a court should be "much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights"); *Henson v. Warden, London Correctional Inst*., 620 Fed. Appx. 417, 419 (6th Cir. 2015).

Respondent argues Jackson is not entitled to equitable tolling because he failed to exercise diligence in pursuing his rights.  (Doc. No. 8 at 21.)  Respondent notes "the petition is silent as to why it was filed more than a year and four months late." (*Id*.)  Respondent further asserts Jackson "filed nothing on his case" during the entire time period after the limitations period expired.  (*Id*.)  Therefore, Respondent argues, "Jackson cannot show that he was pursuing his rights diligently and that some extraordinary circumstance stood in his way." (*Id*. at 22.)

Jackson does not argue, in either his Petition or Traverse, that he is entitled to equitable tolling.  Even if he had raised the issue of equitable tolling, the Court would have serious doubts as to whether he exercised sufficient diligence under the circumstances.  Jackson argues it was

21

"not his fault" that he failed to timely file his direct appeal to the Ohio Supreme Court because, during the time period when it was due, he was frequently transferred between different state and federal institutions.  (Doc. No. 12 at 4.)  However, the record reflects Jackson was notified by his appellate counsel on July 11, 2015 of the 45 day deadline for perfecting his direct appeal; i.e., he was advised on July 11, 2015 that his appeal to the Ohio Supreme Court was due by August 6, 2015.  (Doc. No. 8-1, Exh. 37 at Page ID#361 at ¶ 4.)  The record reflects Jackson was thereafter able to send numerous letters to the Ohio Public Defender's Office despite his frequent prison transfers.  (*Id.*)  Despite this, Jackson does not explain why he was nonetheless prevented from filing his direct appeal to the Ohio Supreme Court himself during this time period.

More importantly, Jackson offers no explanation as to why he then waited over a year, until January 17, 2017, to file his Application to Reopen Appeal pursuant to App. R. 26(B). This is particularly concerning given the fact Jackson averred that he "first became aware by way of the facilities of the law library" of "a vehicle known as Appellate Rule 26(B)" in October 2015.  (Doc. No. 8-1, Exh. 40 at PageID# 457 at ¶ 154.)  Jackson does not indicate why he then waited over a year (until January 2017) to actually file his 26(B) Application.  Nor does he explain why he delayed until February 22, 2018 to file his federal habeas petition.

Thus, and for all the reasons set forth above, the Court finds Jackson has failed to demonstrate he has been reasonably diligent in pursuing his rights.  *See e.g., Vroman*, 346 F.3d at 605 (finding petitioner's decision to proceed solely to the Ohio Supreme Court rather than filing his federal habeas petition and protecting his federal constitutional rights shows a lack of diligence); *Robinson v. Easterling*, 424 Fed. Appx 439,  442 (6th Cir. May 20, 2011) ("[t]his

22

Court has never granted equitable tolling to a petitioner who sat on his rights for a year and a half, and we decline to do so here"); *Dudley v. Clipper*, 2014 WL 6896080 at * 8-9 (N.D. Ohio Dec. 8, 2014).

In his state court filings, Jackson suggests his delays were due to his *pro se* status and lack of legal training.  The Court rejects any suggestion that Jackson's *pro se* status and/or ignorance of the law constitute  "extraordinary circumstances" warranting equitable tolling. The Sixth Circuit has repeatedly held that "ignorance of the law alone is not sufficient to warrant equitable tolling."  *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).  *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Taylor v. Palmer*, 623 Fed. Appx. 783, 789 (6th Cir. 2015).  *See also Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) ("[w]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"); *Patrick v. Bunting*, 2015 WL 10488878 at * 9 (N.D. Ohio Dec. 29, 2015), *adopted by*, 2016 WL 1047231 (N.D. Ohio Mar. 16, 2016). Moreover, courts within this Circuit have found a petitioner's *pro se* status, lack of legal training, poor education, and/or limited law-library access, standing alone, are similarly insufficient.  *See e.g., Hall*, 662 F.3d at 751 (petitioner's *pro se* status, limited law-library access and lack of access to trial transcript were not sufficient to warrant equitable tolling); *Keeling*, 673 F.3d at 464 ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing"); *Burden v. Bunting*, 2016 WL 5417834 at * 6 (N.D. Ohio July 15, 2016) ("Courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary

23

circumstances justifying equitable tolling"); *Johnson v. LaRose*, 2016 WL 5462635 at * 10 (N.D. Ohio July 8, 2016) ("A petitioner's *pro se* status and his unawareness of the law provide no basis for equitable tolling"). Accordingly, and under the circumstances presented, the Court finds Jackson has failed to demonstrate his *pro se* status and/or lack of legal training constitute extraordinary circumstances justifying equitable tolling.

In sum, because Jackson failed to exercise his rights diligently and no extraordinary circumstance prevented him from filing the instant Petition, the Court finds equitable tolling is not warranted in this case.

**E.      Actual Innocence**

In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013), the United States Supreme Court held that actual innocence, if proven, may overcome the expiration of AEDPA's one-year statute of limitations. The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1). *Id.* at 1931.

For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329). In

24

making this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." *Id*. (quoting *Schlup*, 513 U.S. at 332).

In his Traverse, Jackson argues "a Miscarriage of Justice has occurred due to his actual innocence." (Doc. No. 12 at 4.)  He maintains "this case is predicated on the false and perjured testimony of two State Troopers (Christopher Beyer & Michael Trader) given at the suppression hearing, then thereafter at trial where the evidence clearly dictates that the offered testimony of the two aforementioned Troopers are lies." (*Id*. at 10.)  Jackson asserts, in particular, that the testimony of Troopers Beyer and Trader is contradicted by the dash cam video of the traffic stop in question. (*Id*.)  He then engages in a lengthy discussion of the merits of his habeas claims. (*Id*. at 12-22.)  Jackson argues "the ends of justice require that this Honorable Court address the merits of the issues presented and request the State to submit its rebuttal to the claims that the Petitioner has submitted herein to stop the manifest injustice that has occurred herein to avoid a miscarriage of justice." (*Id*. at 22.)

The Court finds Jackson has not demonstrated he is entitled to the actual innocence exception.  While he argues the testimony against him was not credible, Jackson does not identify any "new, reliable evidence of his actual innocence that was not presented at trial."[7]

---

[7] The Court notes that Jackson attached an exhibit to his Traverse, entitled "Report of Steven D. Nicely in the case of Ohio v. Isaac Anderson and Ira Lee." (Doc. No. 12-2.)  This appears to be an expert report prepared in a different state court criminal action.  According to the report, Mr. Nicely is " a professional dog trainer with over 30 years' experience in the police service dog field." (*Id*. at p. 5.)  In his report, Mr. Nicely evaluates Ohio State Trooper Trader's use and handling of K9 Argo in the state court criminal cases against Mr. Anderson and Mr. Lee.  "Argo" is the same K9 that alerted to the presence of drugs in Jackson's vehicle, herein.  Mr. Nicely concludes, in part, that "[b]ased on the records provided this team should not have been in service because the dog has a high potential of being cued by the handler.  Also, it is apparent in the video provided the more likely cause of K9 Argo scratching at the driver's door is the handler's actions and not the odor of contraband drugs." (*Id*. at p. 23.)  Jackson does not argue Mr.

25

*Schlup*, 513 U.S. at 324.  Moreover, a review of the state appellate court opinion makes clear that Troopers Beyer and Trader both testified at trial and were subject to extensive cross-examination regarding their actions during the June 4, 2011 traffic stop.  *State v. Jackson*, 38 N.E.2d at 432.  In addition, "trial counsel extensively referred to the inconsistencies between Trooper Beyer's testimony and the other offered testimony . . . during his closing argument." *Id*.  Finally, the state appellate court expressly noted that the video and audio recordings of the traffic stop were introduced at trial.  *Id*.  Thus, while Jackson believes the jury erred in finding him guilty, he has not identified any new, reliable evidence that he is actually innocent.

Accordingly, and for all the reasons set forth above, the Court finds Jackson has not demonstrated he is entitled to the actual innocence exception.

---

Nicely's report demonstrates his "actual innocence" for purposes of *Shlup, supra*. Moreover, any such argument would be without merit. While Mr. Nicely's report may raise questions regarding the reliability of K9 Argo and Trooper Trader's handling of Argo in the cases of Mr. Anderson and Mr. Lee, it does not constitute "new, reliable evidence" that *Jackson* is actually innocent.  Mr. Nicely did not review or render any opinion regarding Trooper Trader's handling of Argo during the traffic stop involving Jackson.

26

### III. Conclusion

For the foregoing reasons, it is recommended the Court find that the instant Petition is time-barred under § 2244(d)(1).[8]  It is further recommended Respondent's Motion to Dismiss (Doc. No. 8) be GRANTED and the Petition be DISMISSED.


 _s/ Jonathan D. Greenberg_____
Jonathan D. Greenberg
United States Magistrate Judge

Date: <u>September 28, 2018</u>


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  _See United States v. Walters_, 638 F.2d 947 (6th Cir. 1981); _Thomas v. Arn_, 474 U.S. 140 (1985), _reh'g denied_, 474 U.S. 1111 (1986).**

---

[8] In his Petition, Jackson requests an evidentiary hearing.  The Court finds an evidentiary hearing is not necessary to resolution of the instant Petition and denies the request.